[Civ. No. 26344.   Second Dist., Div. Three.   July 29, 1963.]

MARTHA DASHEW, Plaintiff and Appellant, v. DASHEW BUSINESS MACHINES, INC., Defendant and Respondent.

Ward, Ryan, Heyler & Traxler and Sidney Traxler for Plaintiff and Appellant.

Levoy, Miller & Salinger and Harry J. Miller for Defendant and Respondent.

SHINN, P. J.—This is an appeal from a summary judgment granted Dashew Business Machines, Inc., one of eight named defendants in the action. The cause of action as to five of the defendants was dismissed by plaintiff, leaving as named defendants, Stanley A. Dashew, former husband of plaintiff, and president and principal stockholder of Dashew Business Machines, Inc., and George R. Beidner, director and business advisor of the corporation. The action arose in the following manner. On July 17, 1961, plaintiff Martha Dashew filed a complaint against the above named defendants, setting forth five causes of action, by which she sought to rescind a property settlement agreement executed on July 20, 1957, between herself and her former husband, and further to set aside certain portions of an interlocutory judgment of divorce obtained by her on November 6, 1957. In addition, plaintiff asked that certain stock of the corporation defendant, now in the name of Stanley Dashew be adjudged community property, that she be declared owner of one-half thereof, or, in the alternative, that she receive judgment against all defendants, except two banks, for one million dollars as compensatory and exemplary damages.

The general features of the agreement were the following. Stanley Dashew owned 7,590 shares, being approximately 90 per cent of the outstanding common stock of respondent corporation. The property settlement agreement was approved and adopted by the court in its judgment of divorce awarded to plaintiff. By the agreement and the decree Stanley retained ownership of all this stock, although he agreed to place 5 per cent of his holdings in a trust for the children of the parties. Although the wife received property of substantial value and there were provisions for the support of herself and the minor children, her present claim is that the stock was community property and that she was defrauded of her share of it.

By the first cause of action it was alleged that Stanley

misrepresented the assets, value, potential and future growth prospects of the corporation as to which matters plaintiff had no knowledge or information. It was alleged that defendant George R. Beidner was the accountant of the corporation as well as the personal accountant for plaintiff and Stanley, and that Beidner represented to plaintiff that Stanley was being generous with her in the proposed settlement, that the corporation was not worth more than $35,000 and had very poor prospects for future growth. It was alleged that the above mentioned representations of Stanley and those of Beidner were false, were made with a fraudulent purpose, that plaintiff was deceived thereby and was defrauded of her interest in the community property. The allegations of the complaint were sufficient, if proved, to entitle plaintiff to equitable relief against Stanley. The second cause of action was based upon undue influence of Stanley and Beidner; the third cause of action pleaded mistake of fact and of law on the part of plaintiff as to her marital and community property rights, the same being known to defendants but unknown to plaintiff.

In the fourth cause of action plaintiff realleged all the allegations of the first cause of action which were founded in fraud, and adopted them by reference. It was then alleged that all the defendants ". . . contrived, conspired, combined and agreed to defraud plaintiff out of a fair and equitable share of the community property of plaintiff and STANLEY A. DASHEW . . . and other material and property rights. . . ."

The defendant corporation moved for summary judgment. Copious affidavits were filed in support of the motion and in opposition thereto. After an extended hearing the court held there was no triable issue as between plaintiff and the corporation and in granting its motion for summary judgment stated in part: ". . . I fail to find that the corporation had anything to do with the negotiation and execution of the property settlement; . . . I can't agree that the averments establish that he [Stanley Dashew] was the alter ego of the corporation." It is clear to us that no allegation of fact was contained in the affidavits of plaintiff and her attorney, filed in opposition to the motion, which presented any triable issue between plaintiff and the corporation.

Plaintiff's affidavit sets forth the representations and concealments of Stanley and Beidner and contains numerous statements seeking to fasten responsibility on the corporation for the actions of Stanley and Beidner such as ". . . each of

them acting for themselves and for Dashew Business Machines, Inc.'' and ''. . . as agents for Dashew Business Machines, Inc. . . .'' and concealment of facts ''. . . by Dashew Business Machines, Inc.''; that Stanley and Beidner did act ''. . . for and on behalf of Dashew Business Machines, Inc. . . .'' and that the corporation ''. . . did participate in 'negotiations, discussions or proceedings relating to the property settlement agreement.' '' It was also stated in plaintiff's affidavit that Stanley ''was'' the corporation and that the corporation paid her during 1957 $3,350 as salary, at the direction of Stanley, in order to forestall any court action for support and maintenance and to further the scheme and plan of Dashew, Beidner and the corporation to deprive plaintiff of her community interest in the corporation. These are mere conclusionary assertions and of no evidentiary weight or value. The trial court found that plaintiff had failed to produce any evidence that the corporation had anything to do with the matter of the property settlement agreement or any part whatever in the negotiation of the same. The court could not have found otherwise.

The corporation held no property in which plaintiff claimed an interest. It was not a party to the property settlement agreement and was under no duty or obligation imposed by the agreement. Its interests were not adverse to those of plaintiff. It had no rights and claims which it could assert in opposition to plaintiff's claim of community ownership of the stock of the corporation. It did not at any time or in any manner authorize either Stanley or Beidner to act for it in negotiation of the property settlement agreement, or to make any representation or promise on its part or on behalf of Stanley; it received nothing directly or indirectly through or by reason of the property settlement agreement and it engaged in no representation or concealment or in any activity which tended in the slightest degree to make it a party to any fraud that might have been committed by Stanley or by Beidner. All these facts were clearly shown by affidavits that were filed in support of the motion. The affidavits filed in opposition did not contradict by any statement of fact the factual assertions stated in the supporting affidavits. Moreover, there was no showing on behalf of plaintiff that she ever called upon the corporation for any financial statement or any statement with respect to the condition of its business or the prospects for the development and growth of the same. The corporation had no duty to volunteer any such

information and, of course, incurred no responsibility in remaining silent with respect to a matter with which it was not concerned.

The ultimate facts developed in the hearing were that the matter of the property settlement was exclusively the personal business of Dashew, himself, and that the activity of Beidner concerned only the personal business of Stanley; that neither of them had authority to act in the matter on behalf of the corporation and neither of them did in fact act or purport to act on behalf of the corporation.

■ It would seem to be too clear for argument that a corporation cannot be held responsible for the acts of its officers or agents which are clearly beyond their express or implied duties, in matters which are strictly personal to them, of no interest to the corporation and from which the corporation derives no benefit whatever. Dashew was the president of the corporation, and it was alleged that he was in full control of its business affairs, but this fact and the fact that he owned about 90 per cent of the corporate stock did not involve the corporation in his personal affairs nor authorize him to act on its behalf in matters unconnected in any manner with its property or business. A case in point is *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958], in which a fraud judgment against a corporation and its president and general manager, Greene, was reversed as to the corporation for the reason that it was not responsible for the misrepresentation of Greene. The fraud consisted of misrepresentation of the capital stock of Hobart Estate Co. by Greene, as a result of which he was able to purchase, on behalf of his principal, plaintiff's stock for less than its true value. The court stated (pp. 450, 451): "It does not appear, however, that Greene was acting within the scope of his duties as general manager of the company in negotiating the purchase of the stock from plaintiff. The transaction was between two individual shareholders, namely, plaintiff and Greene's principal, Alice Lester. Ordinarily, a corporation is not interested in a sale of stock by one shareholder to another and, in the absence of special circumstances, such transactions are not within the implied authority of a general manager. [Citations.] . . . The company was not liable merely because Greene was its president and general manager. (See Rest., Agency, § 258, com. b where it is said: *'Statements not connected with agent's employment.* Except where the position occupied by an agent enables him

to perpetrate a fraud, a principal is subject to liability for the deceit of an agent only in connection with matters entrusted to him. Misrepresentations concerning matters which are beyond the range of what the agent is employed to handle are no more effective to create liability against the principal than are the agent's promises as to them.')"

■ It was asserted that Stanley "was" the corporation, that he controlled its affairs and that the corporation was his *alter ego*. The fact that he was the president and the owner of a controlling interest in the stock furnished no ground for obliterating the separate identity of the corporation. (*Dos Pueblos Ranch & Imp. Co.* v. *Ellis*, 8 Cal.2d 617 [67 P.2d 340]; *Shafford* v. *Otto Sales Co., Inc.*, 119 Cal.App.2d 849 [260 P.2d 269].) ■ The doctrine of *alter ego* is resorted to only when it is necessary in order to avoid a grave injustice. It cannot be invoked here to render the corporation liable for the personal obligations of Stanley. We can discover no good reason for naming the corporation as a defendant. It is altogether just that it should be relieved of the stigma of the charge of fraud and the demand of one million dollars as damages.

The judgment is affirmed.

Ford, J., and Files, J., concurred.